UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

PEREZ AUGHTRY, 07-B-2499,

       Petitioner,

      -v-                              09-CV-1026(MAT)
                                          **ORDER**

DALE ARTUS,

       Respondent.

───────────────────────────────

## I.   Introduction

*Pro se* petitioner Perez Aughtry ("petitioner") has filed a petition for writ habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction in Erie County Court of Kidnapping in the Second Degree (N.Y. Penal L. § 135.20) and Unlawful Imprisonment in the First Degree (§ 135.10). The judgment of conviction, entered on July 26, 2007, followed a non-jury trial before Judge Michael F. Pietruszka. He was sentenced to fifteen years imprisonment plus five years of post-release supervision for the kidnapping conviction, concurrent to an indeterminate term of two to four years for the unlawful imprisonment conviction.

## II.  Factual Background and Procedural History

Petitioner's conviction stems from an incident wherein petitioner accosted Shetia Dixon ("the victim") on the street, carried her to a nearby apartment building, restrained her, and

insisted that she call her boyfriend, with whom petitioner had a grudge over a drug deal gone wrong.

According to the trial testimony, Marciea Dixon ("Dixon"), the victim's sister, was dating petitioner and helping him sell drugs from the Shoreline Apartments in the City of Buffalo. On June 6, 2006, Dixon called the victim's boyfriend, Mesha Branch ("Branch"), and offered to sell him some marijuana. T. 30, 40-41, 66, 69, 85-87, 101.[1] When Dixon showed Branch the marijuana, Branch was displeased with the quality and price of the drugs. He then "snatched" the bag containing the marijuana, causing it to spill out onto the floor. According to Dixon, Branch took some of the marijuana without paying for it and left the apartment. As a result, Dixon called petitioner to advise him that he had just been robbed. T. 46, 49, 51, 69-70, 92-94. She also called her sister, the victim, to tell her what had happened. T. 51, 70.

One day later, the victim was walking to a friend's house when she encountered petitioner, who pushed her and accused her of "set[ting] him up." T. 114. The victim and petitioner were acquainted with one another, as the two had a brief sexual relationship a few months prior while the victim's boyfriend, Branch, was serving a short jail term. T. 107-110. The victim testified that petitioner threatened her, and she told him that she did not know what he was talking about. T. 115-116. The victim then

---

[1] Citations to "T.__" refer to pages of the trial transcript; "S.__" refers to the sentencing transcript.

called her sister and told her to talk to petitioner and "straighten it out." T. 116.

On June 8, 2006, the victim was walking to work when she was approached by petitioner, who again insisted on knowing why she set him up. T. 117, 120, 157-158. A woman who was accompanying petitioner then started a fight with the victim at petitioner's urging. The victim, however, ultimately fought the woman off. T. 120-121, 169. At that point, petitioner picked the victim up and slung her over his shoulder, telling her to "call [her] boyfriend so he can shoot him." T. 121-122. Petitioner then carried the victim, who was screaming, to a nearby apartment complex, telling her to calm down and to call Branch. T. 122, 173. While petitioner was still holding her, he was "buzzed" into the apartment building, forced the victim into the elevator, and brought her into the apartment of an acquaintance. T. 128, 130-132.

Once inside the apartment, petitioner told the victim to sit down, threw a telephone to her, and instructed her to call her Branch. The victim responded that she could not contact her boyfriend because he did not have a phone at that time. T. 134-135. The victim further testified that petitioner was holding a gun while he demanded that she make the call. After unsuccessfully calling her mother from the phone, the victim called her father, crying, and told him that petitioner was trying to kill her.

Petitioner snatched the telephone and threatened her again by cocking the gun and pointing it at her head. T. 135-138.

The victim was ultimately able to flee from the apartment after the telephone rang, and, the occupant of the apartment, believing the person on the phone was the victim's father, advised petitioner to "get her out of here." T. 138-141, 191. The victim ran to her mother's house to call the police, and subsequently went to the police station to file a report. T. 145-146, 208. Police then took the victim to petitioner's home in the Shoreline Apartments, where she identified him as the perpetrator. T. 146.

The defense's position at trial was that a kidnapping did not occur, but merely an attempt to compel the victim to call her boyfriend to meet with petitioner to resolve the issue of the stolen drugs. T. 430-437.

The trial court found petitioner guilty of second-degree kidnapping and first-degree unlawful imprisonment, and acquitted him of two additional crimes charged in the indictment, second-degree menacing and fourth-degree criminal possession of a weapon. T. 457-458. Petitioner was subsequently adjudicated a second violent felony offender pursuant to N.Y. Crim. Proc. L. § 400.15, and was sentenced to aggregate terms of imprisonment totaling fifteen years with five years of post-release supervision. S. 9-10.

Through counsel, petitioner filed a brief in the Appellate Division, Fourth Department, raising the following points for

appeal: (1) the conviction was based on legally insufficient evidence; alternatively, the verdict was against the weight of the evidence; (2) petitioner's kidnapping conviction was precluded by the merger doctrine in violation of his right to due process; (3) petitioner was denied his rights to due process and a fair trial when the trial court denied his motion to set aside the verdict; and (4) the sentences were unduly harsh and excessive. Resp't Ex. B. The Appellate Division affirmed the judgment of conviction without opinion. People v. Aughtry, 57 A.D.3d 1430 (4th Dept. 2008), lv. denied, 12 N.Y.3d 780 (2009), recons. denied, 12 N.Y.3d 851 (2009).

This habeas petition followed, in which petitioner raises the same grounds for relief as he did on appeal. For the reasons that follow, petitioner's claims for habeas relief are denied, and the petition is dismissed.

## III. Discussion

### A.   Legal Standard for Federal Habeas Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment

"need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.   Merits of the Petition

#### 1.   Legal Insufficiency

Petitioner first contends that his kidnapping conviction was based on legally insufficient evidence because the proof did not establish intent to prevent the victim's liberation, but rather an intent to compel her to call her boyfriend, Mesha Branch, to resolve a botched drug transaction. Petition ("Pet."), Attach. 22-A. Alternatively, petitioner argues that the verdict is against

the weight of the evidence. Id. While the Appellate Division rejected petitioner's appeal without opinion, its determination nonetheless constitutes a decision on the merits and is subject to the AEDPA's deferential standard of review. Herrera v. Senkowski, 77 Fed.Appx. 549, 551 (2d Cir. 2003); Aparicio v. Artuz, 269 F.3d 78, 92-94 (2d Cir. 2001) (denial of claims without opinion but without indicating that denial was on procedural grounds is adjudication on the merits); see Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) ("Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process").

A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Comm'r of Corr. Services, 235 F.3d 804, 813 (2d Cir. 2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This sufficiency-of-evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). Stated another way, the reviewing court must determine "whether the jury,

drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt ... view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor." United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), cert. denied sub nom. Mont v. United States, 462 U.S. 1108 (1983).

A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (citation omitted), cert. denied, 528 U.S. 1170 (2000). In New York, a person is guilty of second-degree kidnapping when "he abducts another person." N.Y. Penal L. § 135.20. "'Abduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force." § 135.00(2). "Restrain", in turn, "means to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. A person is so moved or confined 'without consent' when

such is accomplished by (a) physical force, intimidation or deception, or (b) any means whatever . . . ." § 135.00(1).

The evidence at trial established that petitioner forcibly brought the victim to an unknown apartment, a place where she was not likely to be found, and threatened to kill her while pointing a gun at her. Petitioner's intent was evidenced by his objective to restrain and terrorize the woman he believed had "set him up," as it was the victim who was targeted after the drug transaction went awry. The abduction was prefaced by a another threatening encounter the day prior, when petitioner accused the victim of wronging him and threatened to kill her and her child. T. 114-116. With regard to that incident, Mavis Knox, testified that petitioner approached her to "toss around" another woman who had been "giving [him] problems" in exchange for thirty dollars.  T. 231. Finally, the victim testified that it was she who ended the brief relationship she had with the petitioner, and, following the ordeal, petitioner told her that he still loved her, see T. 286, underscoring the notion that the victim was indeed the object of his conduct. Contrary to petitioner's assertion, a reasonable view of the evidence suggests that petitioner's demand of the victim to call Branch was incidental to her abduction.

Thus, drawing all reasonable evidentiary inferences in favor of the prosecution, there was ample evidence for a rational fact-finder to conclude that the prosecution met its burden of

proving petitioner's guilt beyond a reasonable doubt on the essential elements of second-degree kidnapping. Accordingly, the Appellate Division's determination was not contrary to, or an unreasonable application of the precepts of Jackson v. Virginia.

Moreover, petitioner's claim that the verdict is against the weight of the evidence is not an issue properly raised on habeas review because it does not present a constitutional question. See McKinnon v. Superintendent, Great Meadow Corr. Facility, No. 08-2828-PR, 2011 WL 2005112, *4 (2d Cir. May 24, 2011) (unpublished opinion) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus") (citing Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001), Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y. 2002); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

## 2. Merger Doctrine

Petitioner contends in Ground Two of the petition that his kidnapping conviction was precluded by the merger doctrine.[2] Pet., Attach. 22-B.

The so-called "merger doctrine" was developed by New York state courts and is a doctrine of state law, and it is well-settled that "federal habeas corpus relief does not lie for errors of state

---

[2] "The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." People v. Cassidy, 40 N.Y.2d 763, 767 (1976).

law." <u>Estelle</u>, 502 U.S. at 67-68. To that end, district courts in this Circuit have held that stand-alone claims of violations of New York's merger doctrine are not cognizable on habeas review. <u>See</u> <u>Mackenzie v. Portuondo</u>, 208 F.Supp.2d 302, 323 (E.D.N.Y. 2002), <u>Dinsio v. Donnelly</u>, Nos. 9:03-CV-0779 (LEK/VEB), 9:04-CV-013 (LEK/GJD), 2007 WL 4002684, *12 (N.D.N.Y. Nov. 15, 2007) ("Petitioner's claim that the Appellate Division erred with respect to its interpretation and application of the merger doctrine is purely a claim under New York State law. Such claims are not cognizable on federal habeas review."); <u>McLeod v. Graham</u>, No. 10 Civ. 3778(BMC), 2010 WL 5125317 (E.D.N.Y. Dec. 9, 2010).

Accordingly, petitioner's claim that the kidnapping charge should have been dismissed under the merger doctrine is not properly before this Court because it does not present an issue of Constitutional magnitude.

### 3.  Denial of 330.30 Motion / Waiver of Jury Trial

Petitioner next avers that he was not competent to waive a jury trial, and that the trial court's refusal to set aside the verdict and grant a new trial on that basis deprived him of his rights to due process and a fair trial. Pet., Attach. 22-C.

Petitioner appeared before the county court for sentencing with his attorney on October 30, 2006. At that time, defense counsel informed the court that he had learned that petitioner did not understand the proceedings or jury waiver that he executed, and

consequently submitted a motion to set aside the verdict pursuant to N.Y. Crim. Proc. L. § 330.30. See Hr'g Mins. dated 10/30/2006 at 2. The court granted a competency hearing, in which testimony was heard from two forensic psychiatrists who had evaluated petitioner. Both experts testified that his behavior was "malingering," and both concluded that petitioner was not incapacitated for purposes of the proceedings against him.  Competency Hr'g Mins. 12, 17, 37-39. The court then issued a written memorandum and order, finding that the prosecution had met its burden of establishing petitioner's competence by a preponderance of the evidence, noting that "nothing in the Record establishes sufficient doubt as to the Defendant's mental competency to understand proceedings against him or to assist his own on defense." See Memorandum and Order, Erie County Court (Peitruszka, J.C.C.), No. 1355-2005, dated 5/10/2007 at 5-6. The court further observed that "at no time did Defense Counsel advise the Court that he either had difficulty communicating with the Defendant, or that the Defendant exhibited any form of incapacity to understand or continue with his criminal proceedings." Id. at 6. Rather, it was petitioner himself that advised the court, at his original sentencing date, that he suffered from mental incapacity at the time he executed the jury waiver. Id.

A waiver of a constitutional right must be made voluntarily, knowingly, intelligently, and also competently. Johnson v. Zerbst,

304 U.S. 458, 465 (1938).  A state court's finding of a defendant's mental competency is a factual question entitled to deference. See Demosthenes v. Baal, 495 U.S. 731, 735 (1990). The Court has reviewed the transcript of the competency hearing, as well as the county court's memorandum and order. The record fully supports the trial court's finding that petitioner was competent, which is afforded a presumption of correctness under AEDPA. Petitioner comes forward with no evidence regarding his competency to rebut that presumption.

To the extent that petitioner seeks to argue that the waiver was not knowing or intelligent, the Court observes that the trial court in this case advised petitioner that he would waive right to have a jury of twelve individuals decide his case, and instead have the court determine the facts and law of his case. Petitioner acknowledged that he discussed the waiver and its significance with his attorney. Jury Trial Waiver Tr. 4-6. The record in this case is clear that petitioner knowingly and intelligently made the choice to waive a jury trial, informed by both the judge and his attorney of the consequences. Stated another way, there was "an affirmative showing that [the waiver] was intelligent and voluntary." Boykin v. Alabama, 395 U.S. 238, 242 (1969).

The Appellate Division's rejection of petitioner's argument therefore does not run afoul of Supreme Court precedent, and this claim is dismissed.

### 4. **Harsh and Excessive Sentence**

Petitioner concludes his petition by arguing that the sentence was unduly harsh and excessive. Pet., Attach. 22-D. However, a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

Accordingly, this claim must be dismissed for failing to state a constitutional violation.

## IV. Conclusion

For the reasons stated above, Perez Aughtry's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a

"substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
                MICHAEL A. TELESCA
            United States District Judge

Dated:      June 13, 2011
            Rochester, New York